UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

ERICA BUFORD,

    Plaintiff,

v.

    Case No. _____

OCWEN LOAN SERVICING, LLC,

    Defendant.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Erica Buford sues Defendant Ocwen Loan Servicing, LLC and alleges:

### Introduction

1. This is an action alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

2. The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and to prevent abusive "robocalls."

3. In describing the importance of the TCPA, Senator Hollings, the TCPA's Sponsor, said "I echo Supreme Court Justice Louis Brandeis, who wrote 100 years ago that 'the right to be left alone is the most comprehensive of rights and the one most valued by civilized man.'" 137 Cong. Rec. 30,821 (1991).

4. "Senator Hollings presumably intended to give telephone subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints [the FCC] receive[d]. Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing.

6. As the Seventh Circuit Court of Appeals wrote: "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious." *Patriotic Veterans v. Zoeller*, 845 F.3d 303, 305-06 (7th Cir. 2017).

**Jurisdiction, Venue and Parties**

7. This Court has original jurisdiction over Plaintiff's claim arising under the TCPA pursuant to 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, as the state law claim arises out of a common nucleus of operative fact, and forms part of the same case or controversy.

9. Venue is appropriate in the United States District Court for the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1391, as Defendant resides in Palm Beach County, Florida.

10. Plaintiff is a natural person, and citizen of the State of Alabama, residing in Mobile County, Alabama. However, at all times relevant hereto, Plaintiff was a resident of Escambia County, Florida.

11. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

13. Plaintiff is an "alleged debtor."

14. Defendant Ocwen Loan Servicing, LLC is a company organized in the State of Florida, with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409, and which conducts business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

## General Allegations

15. Defendant called Plaintiff on Plaintiff's cellular telephone more than 100 times in an attempt to collect an alleged debt.

16. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C. § 227(a)(1) (hereinafter "autodialer calls").

17. Sometimes when Plaintiff answered her telephone she heard a pause before a voice came on the line from Defendant.

18. A pause in the telephone call before being connected to a live agent is indicative of an automatic telephone dialing system. *See, e.g., Cummings v. Rushmore Loan Mgmt. Serv.*, No. 8:17-cv-1652-T-33MAP, 2017 U.S. Dist. LEXIS 177619, at *2 (M.D. Fla. Oct. 26, 2017) (explaining that a pause before a live person comes on the line is indicative of an ATDS); *France*

*v. DiTech Fin., LLC*, No. 8:17-cv-3038-T-24MAP, 2018 U.S. Dist. LEXIS 58711, at *19-20 (M.D. Fla. Apr. 6, 2018) (same).

19. Plaintiff received a large number of telephone calls from Defendant, both in frequency and in volume.

20. A large volume and frequency of calls is indicative the calls were made from an ATDS. *See, e.g., Cummings v. Rushmore Loan Mgmt. Serv.*, No. 8:17-cv-1652-T-33MAP, 2017 U.S. Dist. LEXIS 177619, at *2 (M.D. Fla. Oct. 26, 2017) (explaining that a large number and frequency of calls is indicative of an ATDS).

21. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (334) ***-8298, and was the called party and recipient of Defendant's calls.

22. Defendant placed an exorbitant number of calls to Plaintiff's cellular telephone (334) ***-8298 in an attempt to collect an alleged debt.

23. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following telephone number: (800) 746-2936.

24. On several occasions since Defendant's campaign of telephone calls began, Plaintiff instructed Defendant's agents to stop calling her cellular telephone.

25. In or around November 2017, Plaintiff answered a call from Defendant to the aforementioned cellular telephone number. Plaintiff spoke to Defendant's agent/representative and informed that agent/representative that she was no longer able to afford the mortgage, she explained she was getting a divorce and filing for bankruptcy.

26. Defendant sent Plaintiff on email on December 14, 2017 acknowledging that Plaintiff was now unable to pay the mortgage due to divorce and bankruptcy.

27. Each subsequent call Defendant made to Plaintiff's aforementioned cellular telephone number was knowing and willful and made without Plaintiff's "express consent."

28. Despite Plaintiff clearly and unequivocally revoking any consent Defendant may have believed it had to call Plaintiff on his cellular telephone, Defendant continued to place automated calls to Plaintiff.

29. Again, in or around the first week of May 2018, Plaintiff answered a call from Defendant to the aforementioned cellular telephone number. Plaintiff spoke to Defendant's agent/representative and told Defendant that she can't make any payments to stop calling. But the calls did not stop.

30. Plaintiff's numerous conversations with Defendant's agents/representatives over the telephone, wherein she demanded cessation of calls, were in vain as Defendant continued to bombard her with automated calls unabated.

31. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can be reasonably expected to harass.

32. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to call individuals just as it did to call Plaintiff's cellular telephone in this case.

33. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to call individuals just as it did to call Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

34. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they wish for the calls to stop.

35. Defendant has other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

36. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requests to stop.

37. Defendant has had numerous complaints from consumers across the country asking to not be called; however, Defendant continues to call the consumers.

38. Defendant's corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

39. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

40. Not a single call placed by Defendant to Plaintiff was placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

41. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

42. From each and every call Defendant placed to Plaintiff's cellular telephone without consent, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

43. From each and every call Defendant placed to Plaintiff's cellular telephone without consent, Plaintiff suffered the injury of occupation of her cellular telephone line and cellular telephone by unwelcome calls, making the telephone unavailable for legitimate callers or outgoing calls while the telephone was ringing from Defendant's calls.

44. From each and every call Defendant placed to Plaintiff's cellular telephone without consent, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

45. Each and every call Defendant placed to Plaintiff's cellular telephone without consent was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go through the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

46. Each and every call Defendant placed to Plaintiff's cellular telephone without consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

47. Each and every call Defendant placed to Plaintiff's cellular telephone without consent where a voice message was left, occupied space in Plaintiff's telephone or network.

48. Each and every call Defendant placed to Plaintiff's cellular telephone without consent resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular telephone and her cellular telephone services.

49. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress and aggravation from having to deal with Defendant's numerous unwanted phone calls.

## COUNT I
### (Violation of the TCPA)

50. Plaintiff restates and incorporates herein her allegations in paragraphs 1 through 49 as if fully set forth herein.

51. Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that she wished for the calls to stop.

52. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C. § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

53. Plaintiff restates and incorporates herein his allegations in paragraphs 1 through 49 as if fully set forth herein.

54. At all times relevant to this action Defendant was subject to and required to abide by the laws of the State of Florida, including Florida Statute § 559.72.

55. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

56. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his family.

57. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

Respectfully submitted,

*/s Joshua R. Kersey*
Joshua R. Kersey
Florida Bar No. 087578
MORGAN & MORGAN, PA
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 225-5505
Facsimile:  (813) 222-2490
JKersey@ForThePeople.com
CheyenneReed@ForThePeople.com
*Attorney for Plaintiff*